UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SERGEI VASHCHUK, | Case No. 2:26-cv-00177-TMC |
| Petitioner, | ORDER ON HABEAS PETITION |
| v. | |
| PAMELA BONDI, et al., | |
| Respondents. | |

Petitioner Sergei Vashchuk is an individual who is detained at the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC") in Tacoma, Washington. He petitions the Court under 28 U.S.C. § 2241 for relief from physical custody, arguing that his detention has become indefinite in violation of the Immigration and Nationality Act ("INA") and requesting an injunction restricting his removal to third countries. Dkt. 5.

For the reasons stated below, the Court GRANTS the petition and GRANTS IN PART and DENIES IN PART Petitioner's request for a permanent injunction.

## I.    BACKGROUND

Petitioner is a native and citizen of Russia who arrived in the United States at a port of entry and was detained by U.S. Immigration and Customs Enforcement ("ICE") on May 9, 2024. Dkt. 5 at 3–6; Dkt. 9 ¶ 3. Petitioner pursued an asylum claim, arguing that he feared persecution

ORDER ON HABEAS PETITION - 1

in Russia for his political opinions. *Id*. at 7. On November 20, 2024, an Immigration Judge ("IJ") denied Petitioner's asylum claim under the Circumvention of Lawful Pathways Rule and found him removeable to Russia. *Id.* at 8; Dkt. 5-1 at 3–4. The IJ noted that "but for the presumption of asylum ineligibility" required by the Circumvention of Lawful Pathways rule, it "would grant Respondent's application for asylum." Dkt. 5-1 at 3. The IJ instead granted withholding of removal pursuant to 8 U.S.C. § 1231(b)(3), finding that Petitioner had a well-founded fear of future persecution by the Russian government for his political opinions opposing corruption. *Id*. at 5–6. The Department of Homeland Security ("DHS") appealed the decision but never submitted briefing on the matter, and on June 4, 2025, the Board of Immigration Appeals ("BIA") dismissed the case and upheld the IJ's decision. *Id*.

Although the IJ's order prohibits Petitioner's removal to Russia, Respondents have kept Petitioner detained while they seek his removal to a third country. According to a declaration submitted by Gennadiy Baz, a Deportation Officer at NWIPC who works for ICE's Office of Enforcement and Removal Operations ("ERO"), Petitioner expressed his preference to be removed to Canada, Denmark, France, Norway, or Germany. Dkt. 9 ¶ 9. On September 2, 2025, ERO instead served Petitioner with a notice of intent to remove him to Uganda. *Id*. Two weeks later, they instructed Petitioner to complete forms for third country removal to his preferred countries. *Id*. ¶ 10. On January 10, 2026, ICE emailed these forms to the Danish, Norwegian, and Swedish embassies. *Id*. ¶ 13. They have received no response from these countries. *Id*. There is no other evidence in the record of progress toward Petitioner's removal.

On January 16, 2026, Petitioner filed his proposed habeas petition along with motions for leave to proceed *in forma pauperis* ("IFP") and to appoint the Federal Public Defender as counsel. Dkts. 1, 2. The Court granted IFP, appointed counsel, and set a briefing schedule on January 20, 2026. Dkt. 4.

ORDER ON HABEAS PETITION - 2

Petitioner argues that his detention has become indefinite because there is no likelihood of his removal to Russia or any third country. Dkt. 5 at 8–10. He also claims that Respondents have engaged in a scheme of punitive removal to third countries "without providing fair notice and an opportunity to contest the removal in immigration court." Dkt. 5 at 15. Petitioner asks that the Court release him from custody and prevent Respondents from re-detaining him unless they obtain a valid travel document to a third country and provide an opportunity to contest the removal. *Id*. at 21–22. Respondents filed a return brief on February 3, 2026. Dkt. 8. Petitioner filed his traverse on February 9, 2026. Dkt. 11.

## II.    LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

In *Zadvydas v. Davis*, the Supreme Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens[1] subject to final orders of removal. 533 U.S. 678, 699 (2001). Applying the doctrine of constitutional avoidance, the Court explained that such an interpretation was necessary "to avoid a serious constitutional threat." *Id.* As the Court recognized, "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem [under] . . . [t]he Fifth Amendment's Due Process Clause." *Id.* at 690. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* The Court concluded that,

---

[1] "This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

"once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id*. at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701.

Additionally, the federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). A plaintiff seeking a permanent injunction must demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). To demonstrate that ongoing relief is needed, the party seeking a permanent injunction must establish "some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942 (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

### III.     DISCUSSION

**A.     Petitioner's detention has become indefinite.**

Petitioner is a noncitizen who has been present in the United States for 19 months. Dkt. 5 at 4. He is entitled to the protections of the Due Process Clause. *See Zadvydas*, 533 U.S. at 693. On November 20, 2024, an IJ ordered Petitioner's removal to Russia but withheld removal upon a finding that Petitioner had a well-founded fear of future persecution. Dkt. 5-1 at 2–7. The BIA

ORDER ON HABEAS PETITION - 4

upheld the IJ's decision on June 4, 2025. Dkt. 5 at 3. Having been detained for eight months since that date, Petitioner's continued detention is not "presumptively reasonable." *Zadvydas*, 533 U.S. at 701.

Although Petitioner has been ordered removed to Russia, that removal has been withheld by an IJ based on the likelihood that Petitioner will face political persecution by the Russian government should he ever return. Dkt. 5 at 7–8. That fact alone makes removal to Russia unlikely. "Until that order is lifted or terminated, there is no likelihood—much less, a significant one—that Petitioner will be removed to [Russia] in the reasonably foreseeable future." *Karimaghaee v. Bowen*, No. 5:25-CV-03573-SRM-JDE, 2026 WL 331360, at *4 (C.D. Cal. Feb. 5, 2026) (collecting cases).

Because Petitioner "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the government to "respond with evidence sufficient to rebut that showing*." Zadvydas*, 533 U.S. at 701. But Respondents do not address this issue in their brief. Dkt. 8 at 9–15. Respondents provide Baz's declaration detailing ERO's attempts to remove Petitioner to a third country. Dkt. 9. But these facts only support the finding of indefinite detention, including (1) the government's failure to deport Petitioner since June 2025, Dkt. 9 ¶ 8; (2) that Petitioner "has no ties or family" in any countries he "presented an intent to be removed to," *id*. ¶ 9, 12; (3) that Respondents have only submitted requests for removal to Denmark, Norway, and Sweden, *id*. ¶ 13; (4) that Respondents did not submit those requests until January 10, 2026, *id*.; and (5) that none of those countries have responded to the requests for removal. *Id*.

Because there is not a likelihood that Petitioner will be removed to Russia or any other country in the reasonably foreseeable future, his detention is no longer permitted by the INA as construed in *Zadvydas*. *See* 533 U.S. at 699–700 ("[I]f removal is not reasonably foreseeable, the

court should hold continued detention unreasonable and no longer authorized by statute."). Petitioner's detention is unlawful and he must be released. *See Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2025) (allowing release upon a finding that removal was not reasonably foreseeable). The Court therefore GRANTS the petition for writ of habeas corpus. Dkt. 5.

**B.      Respondents may not remove or seek to remove Petitioner to a third country without affording him meaningful notice and opportunity to respond.**

In addition to immediate release on his habeas petition, Plaintiff asks the Court to restrict Respondents' ability to remove him to an unknown third country. Dkt. 5 at 11–18. He argues that such an order is necessary because "Respondents have developed and implemented a policy and practice of removing individuals to third countries, without first following the procedures in the INA for designation and removal to a third country and without providing fair notice and an opportunity to contest the removal in immigration court." *Id*. at 15.

While the petition contains legal argument challenging the government's third-country removal policies, it does not explain why *Petitioner* faces an individual likelihood of removal under those policies. *See* Dkt. 5 at 15–17. As discussed above, however, the record provided by Respondents demonstrates that they notified Petitioner of their intention to deport him to Uganda and have taken steps to remove him to Denmark, Norway, and Sweden. *See* Dkt. 9. The Court therefore finds that Petitioner faces a likelihood of third-country removal under the challenged policies.

The INA dictates the countries to which a noncitizen may be removed after a final order of removal is issued. *Jama v. ICE*, 543 U.S. 335, 338 (2005); *Dzyuba v. Mukasey*, 540 F.3d 955, 956 (9th Cir. 2008) (per curiam). In order of priority, a noncitizen may be removed to (1) a country designated by the noncitizen; (2) a country of which the noncitizen is a subject, national,

ORDER ON HABEAS PETITION - 6

or citizen; or (3) a country with which the noncitizen has a lesser connection. 8 U.S.C. § 1231(b)(2). If the above options are "impracticable, inadvisable, or impossible," the noncitizen may be removed to "another country whose government will accept the alien into that country." 8 U.S.C. § 1231(b)(2)(E)(vii); *Jama*, 543 U.S. at 341.

The government is prohibited from removing a person to a third country where they may be persecuted or tortured. 8 U.S.C. § 1231(b)(3)(A) provides for withholding of removal "if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." And the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), Dec. 10, 1984, S. Treaty Doc. No. 100–20, 1465 U.N.T.S. 113, prohibits removal of a noncitizen to a country where he is likely to be tortured. *See* 8 CFR §§ 208.16–208.17, 1208.16–1208.17; *Johnson v. Guzman Chavez*, 594 U.S. 523, 530–31 (2021). "Withholding of removal and CAT protection only restrict *where* the Government may remove a noncitizen to, not *whether* the noncitizen is subject to removal." *Kumar v. Wamsley*, No. C25-2055-KKE, 2025 WL 3204724, at *2 (W.D. Wash. Nov. 17, 2025). Thus, a noncitizen's removal order remains valid and enforceable, albeit not to the identified country or countries of risk. *See* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(f); *Johnson*, 594 U.S. at 536; *Lanza v. Ashcroft*, 389 F.3d 917, 933 (9th Cir. 2004) (a grant of withholding "only prohibits removal of the petitioner to the country of risk, but does not prohibit removal to a non-risk country").

1.    *Petitioner's claims are not barred by* D.V.D.

Respondents argue that Petitioner's third-country removal claims are barred by the *D.V.D.* class action. *See Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (2025); *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355 (D. Mass. 2025). There, the district court certified a class consisting of:

ORDER ON HABEAS PETITION - 7

All individuals who have a final removal order issued in proceedings under Section 240, 241(a)(5), or 238(b) of the INA (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed.

778 F. Supp. 3d at 378. The preliminary injunction established procedures that DHS and ICE were required to follow before removing a noncitizen to a third country. *See D.V.D. v. U.S. Dep't of Homeland Sec.*, CV 25-10676-BEM, 2025 WL 1453640, at *1 (D. Mass. May 21, 2025) (memorandum offering more guidance on compliance with the preliminary injunction). On June 23, 2025, the Supreme Court stayed the District of Massachusetts' preliminary injunction pending appeal in the First Circuit. *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (2025).

Respondents argue that "[t]he Supreme Court's stay of the preliminary injunction entered in that case is both precedent and the result is binding on Petitioner here by virtue of his status as a member of the *D.V.D.* plaintiff class." Dkt. 8 at 11. As this Court has discussed previously, however, it is not clear whether the Supreme Court in *D.V.D.* "found the government likely to succeed on its jurisdictional or substantive claims." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 732 (W.D. Wash. 2025). "This distinction is especially important in this case, where one of the government's primary arguments—that the *D.V.D.* court had no power to enter *classwide* injunctive relief—would have no bearing on the merits of individual habeas petitions." *Id.*

Ninth Circuit precedent mandates notice and a hearing prior to removal to a third country. *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999); *see also Ibarra-Perez v. United States*, 154 F.4th 989, 1000 (9th Cir. 2025). Absent clear guidance from the Supreme Court that those cases are no longer good law, this Court must follow precedent. *See Nguyen*, 796 F. Supp. 3d at 732, *Arenado-Borges v. Bondi*, No. 2:25-CV-02193-JNW, 2025 WL 3687518, at *5 (W.D. Wash. Dec. 19, 2025). Thus, the emergency docket order in *D.V.D.* does not preclude relief here.

*Francisco Lorenzo v. Bondi*, No. 2:25-CV-02660-LK, 2026 WL 237501, at *8 (W.D. Wash. Jan. 29, 2026).

        2.       *DHS's procedures do not afford due process to Petitioner.*

On July 9, 2025, ICE issued a memorandum updating agency officials on its policy regarding third country removals after the Supreme Court's order in *D.V.D. v. Department of Homeland Sec*. Dkt. 1-11 at 2. The policy states that, "[e]ffective immediately, when seeking to remove an alien with a final order of removal—other than an expedited removal order under Section 235(b) of the [INA]—to an alternative country as identified in section 241(b)(1)(C) of the INA, ICE must adhere to Secretary of Homeland Security Kristi Noem's March 30, 2025 memorandum, Guidance Regarding Third Country Removals, as detailed below. A 'third country' or 'alternative country' refers to a country other than that specifically referenced in the order of removal." *Id.* The policy continues, "[i]f the United States has received diplomatic assurances from the country of removal that aliens removed from the United States will not be persecuted or tortured, and if the Department of State believes those assurances to be credible, the alien may be removed without the need for further procedures. ICE will seek written confirmation from the Department of State that such diplomatic assurances were received and determined to be credible. HSI and ERO will be made aware of any such assurances." *Id.*

Respondents contend that the above policy, and their September 2025 notice to Petitioner of their intention to remove him to Uganda, satisfy Petitioner's request to be provided with notice of third-country removal. Dkt. 8 at 12, Dkt. 9 ¶ 9. But Petitioner seeks "notice and meaningful opportunity to respond *in compliance with the statute and due process* in reopened removal proceedings." Dkt. 5 at 4 (emphasis added). And "both the due process clause and the governing statute place the burden on the government—regardless of whether the country of deportation is designated during or after the removal hearing—to provide a meaningful

ORDER ON HABEAS PETITION - 9

opportunity to be heard on asylum and withholding claims." *Aden*, 409 F. Supp. 3d at 1010 (citing *Torres-Aguilar v. INS*, 246 F.3d 1267, 1270 (9th Cir. 2001)). This cannot be satisfied by simply allowing the noncitizen to file a motion to reopen their removal proceedings; rather, the removal proceedings must be reopened so that a hearing can be held. *Id.* at 1011. Respondents themselves "recognize that courts in this District have found that due process requires more than current DHS policy." Dkt. 8 at 12 (citing *Nguyen*, 796 F. Supp. 3d at 728 ("It would be impossible to comply both with Ninth Circuit precedent and the policy.")).

In light of the foregoing, Petitioner has met the requirements for injunctive relief. *See eBay*, 547 U.S. at 391. Respondents' notice that they intend to deport Petitioner to Uganda under the policy described above demonstrates a "cognizable danger" of removal to a third country with insufficient due process. *Cummings*, 316 F.3d at 897. Remedies such as monetary damages are clearly "inadequate to compensate for that injury." *eBay*, 547 U.S. at 391. And "because the requested injunction seeks only to require Respondents to abide by established legal precedent, they incur no significant hardship and the 'public interest would not be disserved by a permanent injunction.'" *Francisco Lorenzo*, 2026 WL 237501, at *10 (quoting *eBay*, 547 U.S. at 391).

The Court therefore GRANTS Petitioner's request for injunctive relief preventing his removal to a third country without notice and meaningful opportunity to respond in compliance with the INA and due process in reopened removal proceedings.[2]

3.      *The Court otherwise denies Petitioner's request for injunctive relief.*

Petitioner also requests an order that the government may not re-detain him unless it (1) obtains a valid travel document to a third country for him; (2) provides the travel document to

---

[2] Because the Court finds that Respondents violated Petitioner's procedural due process rights, it need not consider his claim that Respondents' actions violated the Administrative Procedure Act. Dkt. 5 at 19–20; Dkt. 11 at 9–11.

ORDER ON HABEAS PETITION - 10

him and his counsel; and (3) offers him the opportunity to leave on his own within two months. Dkt. 5 at 22. But the record does not contain sufficient argument or authority to establish that the Due Process clause will be violated in the absence of these specific procedures, particularly when any effort to re-detain Petitioner would be governed by the regulations set forth in 8 C.F.R. § 241.13. *See* Dkt. 5 at 10–11 (acknowledging that § 241.13 governs revocation of release for noncitizens subject to a final order of removal). The Court therefore DENIES these requests for injunctive relief. The Court also notes that, once he is released from custody based on this order, Petitioner may undertake his own effort to obtain travel documents and leave the United States for a country of his choice that will accept him.

**C.     Petitioner has not shown that he is at risk of punitive removal.**

Petitioner also requests an order prohibiting Respondents from removing him "to any third country because Respondents' third-country removal program seeks to impose unconstitutional punishment on its subjects, including imprisonment and other forms of harm." Dkt. 5 at 22. In contrast to Petitioner's claim that he is being deprived of due process, the record does not contain sufficient evidence either that (1) removal to *any* third country would be punitive; or (2) that he faces a likelihood of removal to a country where he will be imprisoned upon arrival. *See Nguyen v. Scott*, 796 F. Supp. 3d 703, 732–34, 736–39 (W.D. Wash. 2025) (granting preliminary injunction prohibiting removal "to any country where [Petitioner] is likely to face imprisonment upon arrival" based on evidence demonstrating that petitioner was similarly situated to detainees who had faced imprisonment upon removal). While there is extensive evidence across multiple cases that the government is carrying out *some* third-country removals that are unconstitutionally punitive, the law surrounding permanent injunctive relief does not allow the Court to infer from those cases that *everyone* who faces third-country removal is likely to be subject to similar irreparable harm. Here, for example, Petitioner has no criminal

ORDER ON HABEAS PETITION - 11

record, and the government has taken recent steps to request his removal to Denmark, Norway, and Sweden. Dkt. 9 ¶ 13. The Court therefore cannot conclude that Petitioner faces a "cognizable danger" as opposed to a "mere possibility" of punitive removal at this time. *Cummings*, 316 F.3d at 897. This request for injunctive relief is therefore denied without prejudice.

## IV.   CONCLUSION

For these reasons, the Court GRANTS the petition for writ of habeas corpus and GRANTS IN PART and DENIES IN PART Petitioner's request for a permanent injunction. Dkt. 5.

1.   Respondents are ORDERED to release Petitioner Sergei Vashchuk from custody[3] within ONE day of this Order.

2.   Counsel for Respondents shall submit a status report to the Court by the end of the day on February 12, 2026 confirming Petitioner's release.

3.   Respondents, and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them, are PROHIBITED from removing Petitioner to a third country without affording him notice and a meaningful opportunity to be heard in reopened removal proceedings with a hearing before an immigration judge.

Dated this 11th day of February, 2026.

Tiffany M. Cartwright
United States District Judge

---

[3] Subject to reasonable terms of supervision set forth in 8 U.S.C. § 1231(a)(3). *See* 8 U.S.C. § 1231(a)(6) ("[I]f released, [a noncitizen ordered removed] shall be subject to the terms of supervision in paragraph (3))."

ORDER ON HABEAS PETITION - 12